IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JULIET M. JAYNES,                    )
                                     )
                Plaintiff            )          Civil No. 06-01771-KI
                                     )
        v.                           )          OPINION AND ORDER
                                     )
MICHAEL J. ASTRUE,                   )
                                     )
                                     )
                Defendant.           )

David B. Lowry
9900 S.W. Greenburg Road, Suite 235
Portland, OR 97223

        Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

DAVID MORADO
Regional Chief Counsel
DAVID M. BLUME
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

        Attorneys for Defendant

KING, District Judge:

Plaintiff Juliet Jaynes ("Jaynes") seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's final decision is affirmed.

## BACKGROUND

Born in 1964, Jaynes earned a GED in 1982. Tr. 84, 125.[1] Between 1983 and 2001 Jaynes worked as a bakery salesperson. Tr. 120. Jaynes applied for DIB and SSI October 1, 2002. Tr. 85, 603. Jaynes alleges disability since July 1, 2001, due to depression, anxiety, and panic disorder. Tr. 84, 119.

The Commissioner denied Jaynes' applications initially and upon reconsideration. Tr. 50-54, 63-65, 643-46, 649-51. An Administrative Law Judge ("ALJ") held a hearing on May 5, 2005. Tr. 614-687. On August 15, 2005, the ALJ issued an unfavorable decision. Tr. 20-29. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 6-8.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920, *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on May 18, 2007 (Docket #27).

she is, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  At step two,

the ALJ determines if the claimant has "a severe medically determinable physical or mental

impairment" that meets the twelve month duration requirement.  20 C.F.R. §§ 404.1509,

404.1520(a)(4)(ii), 416.909; 416.920(a)(4)(ii).  If the claimant does not have such a severe

impairment, she is not disabled.  *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed"

impairment in the regulations.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the

impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other

relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's

RFC is an assessment of work-related activities the claimant may still perform on a regular and

continuing basis, despite limitations imposed by her impairments.  20 C.F.R. §§  404.1520(e),

416.920(e), Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant

work at step four.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can perform

her past relevant work, she is not disabled.  If the ALJ finds that the claimant's RFC precludes

performance of her past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work

existing in the national economy.  *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099

(9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f), 416.920(a)(4)(v); 416.920(f).  If the

claimant cannot perform such work, she is disabled.  *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1566, 416.920(g), 416.966.

## THE ALJ'S FINDINGS

The ALJ found Jaynes' depression, anxiety, and fibromyalgia "severe" at step two in the sequential proceedings. Tr. 28. At step three the ALJ found that these impairments did not meet or equal a listed impairment. *Id.* The ALJ found Jaynes' testimony "regarding her limitations" not "totally credible" and assessed Jaynes' RFC:

> The claimant has the residual functional capacity to sit 8 hours out of an 8-hour day and at least 1 hour at a time. She can stand and walk 8 hours out of an 8-hour day and at least 1 hour at a time. When sitting or standing she should be permitted to stretch or move without necessarily changing from sitting to standing or standing to sitting. She can lift 25 pounds maximum. She can lift 10 pounds frequently. She should avoid crowds, close supervision, and work performed in cooperation with coworkers or the public. Work should be performed in a fairly isolated situation, such as her own workstation, performing routine, repetitive tasks.

Tr. 28. At step four the ALJ found Jaynes unable to perform her past relevant work, but found at step five that Jaynes could perform work in the national economy. *Id.* The ALJ therefore found Jaynes not disabled at any time through the date of her decision.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied

4 - OPINION AND ORDER

proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Jaynes contends that the ALJ erroneously evaluated the medical evidence, her testimony, and that of lay witnesses. Jaynes subsequently contends the ALJ made an inaccurate RFC assessment and, consequently, made an erroneous finding that she was not disabled.

## I.    Medical Source Statements

Jaynes challenges the ALJ's evaluation of a treating physician, an examining psychologist, a reviewing physician, and two mental health counselors.

### A.    Legal Standard

Generally, a treating physician is accorded greater weight than an examining physician, and an examining physician is in turn accorded greater weight than a reviewing physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the opinion of a treating or examining physician is contradicted, then an ALJ need only identify specific and legitimate reasons supported by substantial

evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9ᵗʰ Cir. 2005). Disability opinions are

furthermore reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

### B.    Treating Physician Dr. Sheasley

The ALJ considered Dr. Sheasley's opinion:

> Dr. Sheasley, D.O., a treating physician, opined that the claimant's
> anxiety and depression very frequently interfere with attention and
> concentration. She is incapable of even low stress jobs. She has no
> limitations in her ability to stand, walk or sit and can frequently lift
> 50 pounds. Dr. Sheasley provides no treatment records, mental status
> examination findings, or test result to support these limitations. This
> opinion is given little weight.

Tr. 23.

The ALJ may reject a physician opinions that is "brief, conclusory, and inadequately

supported by clinical findings." *Bayliss*, 427 F.3d at 1216 (citing *Tonapetyan v. Halter*, 242 F.3d

1144, 1149 (9ᵗʰ Cir. 2001)). Though Dr. Sheasley stated that she was Jaynes' physician since

September 2002 (tr. 493), the record shows no clinical notes or findings submitted by Dr. Sheasley.

The ALJ's rejection of Dr. Sheasley's opinion is therefore affirmed.

Jaynes now contends that the ALJ failed to develop the record regarding Dr. Sheasley's

opinion. Pl. Opening Br. 23. An ALJ's duty to develop the record is triggered when ambiguities

arise. *Mayes v. Massinari*, 276 F.3d 453, 459-60 (9ᵗʰ Cir. 2001). Here, the ALJ discussed the

findings of examining psychologists Drs. Starbird and Gostnell and treating rheumatologist Dr. Rao.

Tr. 23-24. None of these medical sources suggested Jaynes has adequately supported limitations

similar to Dr. Sheasley's rejected limitations. This record does not suggest an ambiguity regarding

Jaynes' limitations and does not warrant further development.

For these reasons, the ALJ's rejection of Dr. Sheasleys' opinion is supported by substantial evidence. *See Bayliss*, 427 F.3d at 1216.

**C.    Examining Psychologist Dr. Gostnell**

Jaynes submits that the ALJ failed to give appropriate weight to examining psychologist Dr. Gostnell's opinion. Pl. Opening Br. 20-22. The ALJ cited Dr. Gostnell's reiteration of Jaynes' reported history and cited the results of mental status and IQ testing. Tr. 23. The ALJ noted Dr. Gostnell's conclusion that "given the extent to which she is able to live semi-independently, her scores probably do underestimate her true abilities." Tr. 508. The ALJ finally cited Dr. Gostnell's diagnoses of major depressive disorder and panic disorder with agorophobia and his opinion that Jaynes is

> [M]oderately limited in the ability to understand, remember and carry out detailed instructions. She is markedly limited in the ability to interact appropriately with the public and moderately limited in the ability to interact appropriately with supervisors and coworkers. She is moderately limited in the ability to respond appropriately to work pressures in a usual light setting. (Exhibit 15F).

Tr. 23-24. The ALJ concluded that Dr. Gostnell's opinion "is consistent with the treatment record and [Jaynes'] daily activities. It is given significant weight." Tr. 24.

Jaynes submits that, because Dr. Gostnell's report included an IQ score of 79, the ALJ should have limited Jaynes to "simple" tasks. Pl. Opening Br. 21-22. This argument fails for two reasons: first, Jaynes fails to show that the ALJ's evaluation of Dr. Gostnell's report is not based upon the record. As the ALJ noted, Dr. Gostnell included Jaynes' IQ testing results, but concluded that her limitations were not as great as these results suggested. Tr. 508.

Second, Jaynes provides no legal authority for her "simple tasks" submission. Jaynes

suggests that, because a reviewing psychologist concluded that she is limited to "simple and somewhat more than simple tasks" the ALJ was obligated to determine if she was limited to "detailed or simple tasks." Pl. Opening Br. 22. This submission misconstrues both the record and the relevant legal standard. No medical source in fact limited Jaynes to "simple" tasks, and legal authority establishes that treating and examining medical sources are accorded greater weight than reviewing sources. *Lester*, 81 F.3d at 831. For these reasons, Jaynes' submission fails.

### D.    Reviewing Physicians

Jaynes finally submits that the ALJ failed to properly evaluate the opinion of an unspecified reviewing physician. Pl. Opening Br. 22. Jaynes' indicated citation shows a "moderate" limitation in her ability to carry out detailed instructions and no other mental limitations. Tr. 373. Disability Determination Services ("DDS")[2] reviewing psychologist Dr. Anderson subsequently limited Jaynes to "moderate" ability to interact appropriately with the public and "moderate" ability to independently set realistic goals. Tr. 374. Dr. Anderson concluded that Jaynes could perform "more than simple tasks – is precluded from executive level tasks." Tr. 375. The ALJ's RFC assessment included Dr. Anderson's limitations. Jaynes' submission regarding Dr. Anderson's opinion fails.

### E.    Mental Health Counselors Heidi Feigenbaum, L.P.C., and
###          Laurie Baird, L.C.S.W.

Mental health counselors are not "acceptable medical sources" under the Commissioner's regulations. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Such "other" medical sources may provide insight into a claimant's functioning but may not make medical diagnoses. SSR 06-3p at *2 (2006

---

[2]DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. §§ 404.1503, 416.903.

WL 2329939). The ALJ's evaluation of such "other" sources may consider: (1) the duration of the relationship between the claimant and the source; (2) consistency between the source's opinion and other medical evidence; (3) relevance of the evidence presented; (4) explanations for the source's opinion; (5) the source's expertise or speciality; and (6) any other factors that "tend to support or refute the opinion." SSR 06-3p at *4.

The ALJ noted that Heidi Feigenbaum, L.P.C. considered Jaynes "severely impaired" after three sessions and concluded, "Ms. Feigenbaum is not an acceptable medical source and her assessment is not consistent with the claimant's presentation to Jane Starbird, Ph.D." Tr. 22. The ALJ similarly noted Laurie Baird's, L.C.S.W., opinion that Jaynes had "marked" restrictions in mental functioning and again concluded, "Ms. Baird is not an acceptable medical source and her opinion is not consistent with the findings of evaluating psychologists." Tr. 25. The ALJ subsequently described Jaynes' functioning as reported by Dr. Gostnell and alcohol treatment records. *Id.*

Jaynes now contends that, contrary to the ALJ's findings, the opinions of Feigenbaum and Baird are consistent with the opinions Drs. Gostnell and Starbird and should therefore be credited. Pl. Opening Br. 23-24. Dr. Starbird submitted a provisional diagnosis of depression and assessed panic disorder without agoraphobia. Tr. 449. As noted, Dr. Starbird concluded that Jaynes is less limited than her test scores suggest. *Id.* Dr. Gostnell diagnosed moderate, recurrent major depression and panic disorder with agoraphobia and assessed no workplace limitations. Tr. 508.

The ALJ's finding that the limitations assessed by Feigenbaum and Baird are inconsistent with the opinions of Drs. Starbird and Gostnell is based upon the record. This court must defer to

the ALJ's interpretation of the record when more than one rational interpretations arises. *Edlund*, 253 F.3d at 1156. For this reason, the ALJ's finding that limitations assessed by Feigenbaum and Baird are unsupported by the medical record is also affirmed.

In summary, Jaynes fails to show error in the ALJ's evaluation of medical source statements. The ALJ's findings are based upon the record and the appropriate legal standards. The ALJ's findings are affirmed.

## II.    Jaynes' Credibility

Jaynes contends that the ALJ failed to provide clear and convincing reasons for finding her not credible. Pl. Opening Br. 31-32. Jaynes specifically submits that because her impairments could reasonably be expected to cause her reported symptoms, the ALJ should have found her credible. Pl. Opening Br. 31.

### A.    Credibility Analysis

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged" the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284

(9th Cir. 1996). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### B.    The ALJ's Findings

The ALJ's credibility discussion first noted discrepancies between Jaynes' hearing testimony that she did no household chores and her report to Dr. Starbird that she "performed household chores without limitation," including washing dishes, vacuuming, cleaning, "sometimes" prepared meals, and left the house daily to visit a friend. Tr. 24. The ALJ also cited Jaynes' report to Dr. Gostnell that she cared for an elderly stroke survivor in exchange for housing and food, noting that this report included preparing two meals per day, laundry, and housekeeping. *Id.* Finally, the ALJ noted Jaynes' inconsistent reports of alcohol use. *Id.* The ALJ's credibility discussion also cited Jaynes' medical record, noting that her "allegations of disabling pain are inconsistent with her minimal treatment." *Id.*

### C.    Discussion

Jaynes contends that the ALJ's inappropriately considered her activities of daily living and the medical record.

### a.    Activities of Daily Living

Jaynes submits that the activities of daily living the ALJ identified "were not consistent with her anxiety and depression." Pl. Opening Br. 31-32. This submission reverses the relevant standard:

an ALJ need not reject a claimant's reports of her activities of daily living because they are inconsistent with her reported symptoms. The ALJ may reject a claimant's reported symptoms because they are inconsistent with her daily activities. *Smolen*, 80 F.3d at 1284.

Furthermore, the Ninth Circuit notes, "Although the evidence of [a claimant's] daily activities may also admit of an interpretation more favorable to [the claimant], the ALJ's interpretation was rational, and "[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (*citing Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). For this reasons, this court defers to the ALJ's interpretation of Jaynes' daily activities.

### b.    Jaynes' Medical Record

The ALJ may not base his credibility determination upon Jaynes' medical record. The ALJ may, however, note any failure to seek treatment and statements by physicians. *Smolen*, 80 F.3d at 1284. Here, the ALJ noted that Jaynes' sought "minimal" treatment. Tr. 24. The record supports this reasoning and it is affirmed.

The ALJ also noted that "there is no evidence to support the claimant's allegations of bladder and bowel control problems." *Id.* The record does not show that Jaynes experienced bladder or bowel control difficulties. As noted, the claimant must show an underlying impairment before the "clear and convincing" standard applies. *Smolen*, 80 F.3d at 1282. The clear and convincing applies *after* a claimant has shown the existence of an underlying impairment. *Id.* The ALJ noted that the medical record did not support a bladder or bowel impairment. Tr. 24. The record supports this finding. Therefore, the ALJ was not required to give clear and convincing reasons for rejecting

Jaynes' symptom testimony regarding her bladder or bowels.

Jaynes now contends that "the ALJ ignored the fact that fibromyalgia is often accompanied by irritable bowel problems." Pl. Opening Br. 32. Jaynes cites an unpublished disposition from the Northern District of Iowa. This citation does not establish that bladder and bowel dysfunction should be evaluated as "symptom testimony" arising in fibromyalgia patients. *Lundgreen v. Barnhart*, (available at 2006 WL 2796857). Her citation states only that in the instant case the claimant's irritable bowel syndrome "may relate" to her fibromyalgia. *Id.* at *21. This argument fails.

In summary, the ALJ provided acceptable reasons for finding Jaynes not credible. Jaynes has failed to point to errors in the ALJ's credibility decision warranting reversal. The ALJ's credibility decision is affirmed.

## III. Lay Witness Testimony

Jaynes contends that the ALJ inappropriately evaluated statements submitted by "three lay witnesses." Pl. Opening Br. 29. Jaynes asserts that the ALJ must give "germane" reasons for rejecting lay witness testimony, though she does not identify these witnesses. *Id.*

### A. Evaluating Lay Witness Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d), 404.1545(a)(3), 416.913(d), 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment, but she may reject lay testimony inconsistent with the medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.

1996); *Lewis*, 236 F.3d at 512.

**B.    Lay Witnesses Hearing Testimony**

Three lay witness testified at Jaynes' hearing: Jaynes' mother, Patricia Root, her stepfather, Charles Root, and her friend, Michael Evans.  Tr. 670-80.  Evans testified that Jaynes drops things and requires rest after fifteen minutes of activity.  Tr. 673-744.  Patricia Root also testified that Jaynes requires rest after fifteen minutes of activity.  Tr. 677.  Charles Root testified that Jaynes drops things and requires rest after thirty minutes of activity.  Tr. 680.

The ALJ concluded that the record does not support their testimony that Jaynes requires rest after fifteen minutes of activity and found "no evidence to support the allegations . . . that she drops things."  Tr. 25.  The ALJ correctly noted that Jaynes reports hobbies using her hands and that no medical source addressed any limitations in grasping or use of her hands.  Tr. 25.  The ALJ may reject lay witness testimony inconsistent with the claimant's testimony, activities, or the medical record.  *Lewis*, 236 F.3d at 512.  For this reason, the ALJ's analysis of testimony submitted by Patricia Root, Charles Root, and Evans is affirmed.

**IV.    Residual Functional Capacity**

Jaynes submits that the ALJ failed to accurately assess her  residual functional capacity before proceeding to steps four and five of the sequential analysis.  Jaynes specifically contends that the ALJ failed to make any RFC assessment, improperly applied Social Security Ruling 96-8p in reaching her RFC calculation, and failed to limit her to "simple" tasks.

**A.    The ALJ's RFC Assessment**

The ALJ made a clearly identified RFC assessment, quoted above.  Tr. 28.  The ALJ's non-

exertional RFC specifically restricted Jaynes from interaction with crowds, close supervision, and "cooperation with coworkers or the public." Tr. 28. The ALJ also specified that "work should be performed in a fairly isolated situation . . . performing routine, repetitive tasks." *Id.* Jaynes' contention that the ALJ failed to make either a mental or exertional RFC assessment (Pl. Opening Br. 27) is not based upon the record and fails.

      **B.**    **SSR 96-8p**

      **a.**    **"Function-by-Function Analysis"**

Jaynes argues that the ALJ violated SSR 96-8p because she did not conduct a function-by-function analysis of her limitations. SSR 96-8p notes that an RFC assessment is "a function-by-function assessment based upon all of the *relevant* evidence of an individual's ability to do work-related activities." SSR 96-8p at *3 (1996 WL 374184) (emphasis added). However, the Commissioner's regulations do not require an ALJ to discuss a claimant's limitations with respect to each of the fifty-four work functions. *See* 20 C.F.R. § 404.1545, 416.945. Here, the ALJ discussed the relevant evidence and properly assessed the medical evidence, discussed above. This analysis satisfies the requirements of SSR 96-8p.

      **b.**    **"Regular and Continuing Employment"**

Jaynes also contends that the ALJ failed include her fibromyalgia symptoms in his RFC analysis under SSR 96-8p. Pl. Opening Br. 33.

RFC limitations must account the claimant's reported limitations such as pain and fatigue unless the ALJ finds the claimant not credible. 20 C.F.R. §§ 404.1545(a)(i), 416.945(a)(i), *see Smolen*, 80 F.3d at 1284. Here, the ALJ appropriately found Jaynes not credible for the reasons

discussed above.  The ALJ was therefore not required to include limitations stemming from Jaynes' subjective reports in her RFC calculation.

In summary, Jaynes fails to articulate any error in the ALJ's RFC assessment under SSR 96-8p.

## VII.    The ALJ's Step Five Finding

Drawing upon the testimony of a vocational expert ("VE"), the ALJ found Jaynes could perform work in the national economy at step five.  Tr. 27-29.  The ALJ's hypothetical questions to the VE included RFC limitations supported by the medical evidence, discussed above.  Tr. 683.  In making her findings based upon the VE's testimony, the ALJ did not include additional limitations suggested by Jaynes' counsel.  The VE stated that a hypothetical individual with Jaynes' supported RFC could perform work as a produce sorter, small products assembler, or laundry folder.  Tr. 683-84.

Jaynes argues that the ALJ's hypothetical questions to the VE failed to reflect all of her limitations.  Pl. Opening Br. 34.  The ALJ is not required to include unsupported limitations in her hypothetical questions to a VE.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001).  For the reasons established above, Jaynes fails to show substantive error in the RFC assessment.  The ALJ appropriately relied upon this RFC and the VE's testimony in her step five finding.  *Id*.  Jaynes fails to show error in the ALJ's questions to the VE.  The ALJ's finding that Jaynes could perform work in the national economy is based upon an adequate RFC assessment and supported by appropriate vocational testimony.  These findings are affirmed.

///

## **CONCLUSION**

The Commissioner's decision that Jaynes did not suffer from disability and is not entitled to benefits under Titles II and XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence.  The Commissioner's decision is AFFIRMED and the case is dismissed.

IT IS SO ORDERED.

Dated this _____29th_____ day of January, 2008.

 /s/ Garr M. King_____
Garr M. King
United States District Judge

17 - OPINION AND ORDER